UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGE ENGURASOFF, | No. C-14-00689 DMR |
| Plaintiff(s), | **ORDER DENYING WITHOUT PREJUDICE EX PARTE DISCOVERY LETTERS [DOCKET NOS. 42, 54, 55]** |
| v. | |
| ZAYO GROUP LLC, | |
| Defendant(s). | |

Plaintiff Serge Engurasoff and Defendant Zayo Group LLC have filed ex parte discovery letters. [Docket Nos. 42, 54, 55.] In the letters, Plaintiff moves to compel Defendant to produce emails that Defendant is withholding on the basis of the attorney-client privilege. Alternatively, Plaintiff requests that this court review those documents *in camera* to determine whether the privilege was properly asserted. For the reasons stated below, the parties' letters are **denied without prejudice**, and the parties are directed to further meet and confer in the manner described below.

## I. LEGAL STANDARD

**A. Attorney-Client Privilege**

Both parties agree that federal law regarding evidentiary privileges governs cases such as this one, where the court has federal question jurisdiction as a result of Plaintiff's federal causes of action. Fed. R. Evid. 501; *Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005).

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Richey*, 632 F.3d 559, 566 (9th Cir. 2011) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The party asserting the attorney-client privilege has the burden of establishing the relationship and privileged nature of the communication. *Id.* The privilege attaches when the following conditions are met:

> (1) legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

*Id.* (quotation omitted).

Voluntary disclosure of privileged communications constitutes waiver of the privilege for all other communications on the same subject. *Id.* The attorney-client privilege may extend to communications with third parties who have been engaged to assist the attorney in providing legal advice. *Id.* If the advice sought is not legal advice, but, for example, accounting advice from an accountant, then the privilege does not exist. *Id.*

## B. Crime-Fraud Exception

"[T]he attorney-client privilege is not absolute." *In re Napster, Inc. Copyright Litig.*, 479 F.3d 1078, 1090 (9th Cir. 2007) *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009). The "crime-fraud exception" to the privilege protects against abuse of the attorney-client relationship. *Id.*

A party seeking to vitiate the attorney-client privilege under the crime-fraud exception must satisfy a two-part test. *Id.* "First, the party must show that the client was engaged in or planning a criminal or fraudulent scheme when it sought the advice of counsel to further the scheme. Second, it must demonstrate that the attorney-client communications for which production is sought are sufficiently related to and were made in furtherance of the intended, or present, continuing illegality." *Id.* (citations and formatting omitted). The attorney need not have been aware that the client harbored an improper purpose. *Id.* Because both the legal advice and the privilege are for the benefit of the client, it is the client's knowledge and intent that are relevant. The planned crime or fraud need not have succeeded for the exception to apply. *Id.*

## II. DISCUSSION

Defendant has produced a privilege log for approximately 90 emails over which it asserts the attorney-client privilege. See Docket No. 54-1. The privilege log lists, for each email, the page number, the date, the author, the recipients, the CC recipients, the privilege asserted, and a brief description of the subject of the email (e.g., "Discussion re: Serge's Commission, requesting legal advice from Christopher Yost,"[1] "Discussion re: Serge's Violation of Outside Employment Policy forwarding Chrstopher Yost's legal comments and advice," and "Email re: Serge's return to work directly responding to Christopher Yost's attorney client communication of 5/9/13").

Plaintiff does not assert that the privilege log is legally deficient, but instead contends that Defendant improperly asserted the attorney-client privilege over some of the documents on the privilege log. Plaintiff seeks the production of a only subset of the 90 emails: Plaintiff does not request the emails authored by Yost, but instead focuses on (1) emails authored by Defendant's managers, where Yost is either listed as one of several recipients or is only CC'd on the email, and (2) emails where no attorney is listed as an author or recipient.[2]

Plaintiff offers several theories for why the attorney-client privilege is inapplicable to these emails. First, Plaintiff contends that the attorney-client privilege does not attach to documents prepared by Defendant's managers for simultaneous review by legal as well as non-legal personnel, because it cannot be said that the primary purpose of those emails was to seek or communicate legal advice. Second, Plaintiff contends even emails from Yost are not privileged if he was acting in a business capacity and not as a legal advisor.[3] Finally, Plaintiff argues that some of these emails may fall under the crime-fraud exception to the attorney-client privilege. According to Plaintiff, the California Labor Code creates criminal liability for employers who violate California Labor Code §§ 204 or 221, who willfully refuse to pay wages, who falsely deny the amount or validity of wages or deny that they are due, or who unlawfully make deductions to an employee's earned commissions,

---

[1] Christopher Yost is Defendant's General Counsel.

[2] Plaintiff does not specifically identify which of the approximately 90 emails he seeks.

[3] In response to this, Defendant avers that Yost holds no other title besides General Counsel for Defendant and does not act in any non-legal capacity for Defendant. See Docket No. 54 at 1 n. 1.

all acts which Plaintiff alleges Defendant committed. Plaintiff surmises that the subject emails are communications related to and made in furtherance of Defendant's allegedly criminal acts.

Defendant responds with the conclusory assertion that the subject emails are communications in which Defendant sought and received the legal advice of its general counsel, and notes there is no factual basis for Plaintiff's belief that Defendant used legal advice to willfully withhold wages owed, because Defendant made its wage and commission calculations in good faith.

The problem with Plaintiff's theories is that they are suspicions untethered to facts. The problem with Defendant's responses is that Defendant holds all of the information and its conclusory assertions cannot be tested.

The court notes the following general principles of attorney-client privilege. The mere fact that a document includes multiple recipients[4] or CC recipients does not mean that the privilege cannot attach. *See Upjohn,* 449 U.S. at 390-91 (rejecting "control group" test that limited definition of "client" for corporation's assertion of attorney-client privilege to "senior management" who "guid[ed] and integrat[ed] the several operations" and who could "be said to possess an identity analogous to the corporation as a whole," and noting that even lower-level employees could possess relevant information needed by corporate counsel to provide adequate advice); *Admiral Ins. Co. v. District Court*, 881 F.2d 1486, 1492 (9th Cir.1989) (following *Upjohn* and reiterating that the privileged matters must be within the scope of the employee's duties, and employee must be aware that information he or she furnishes will enable attorney to provide legal advice to corporation).

However, the number of recipients, and the fact that the attorney is merely CC'd on emails, suggests the possibility that the emails could be communications regarding business strategy that do not involve the communication or solicitation of legal advice. *See N. Pacifica, LLC v. City of Pacifica*, 274 F. Supp. 2d 1118, 1127 (N.D. Cal. 2003) ("In the business world, a meeting is not automatically privileged simply because legal counsel is present. Moreover . . . the mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged.") (citations omitted). *In re Chase*

---

[4] The court notes that neither party has identified the roles of the authors and recipients of the emails in the privilege log, e.g., whether they are Defendant's employees, contractors, or third parties.

*Bank USA, N.A. "Check Loan" Contract Litigation*, No. 09-md-2032-MMC (JSC), 2011 WL 3268091, at *4 (N.D. Cal. July 28, 2011) ("Merely labeling a communication as an 'attorney-client privileged draft' . . . or adding an attorney as a recipient are insufficient to confer privilege when the communication is not otherwise for the purpose of facilitating legal advice or services."); *Oracle Am., Inc. v. Google Inc.*, No. C 10-03561-WHA, 2011 WL 5024457, at *4 (N.D. Cal. Oct. 20, 2011) (finding that nothing in the content of an email indicated that it was prepared in anticipation of litigation or to further the provision of legal advice, where email was from an engineer, the salutation of the email addressed only a non-attorney, the attorney was "at most, was a mere 'To'" recipient, and "there was no evidence that the [attorney] actually read or responded to the email, much less used it in constructing any legal advice").

The fact that Yost is in-house counsel for Defendant, rather than outside counsel, also makes it more likely that the communications could have been made for a business purpose rather than for the purpose of obtaining legal advice. *See United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1074-76 (N.D. Cal. 2002) ("Communications between a client and its outside counsel are presumed to be made for the purpose of obtaining legal advice . . . . [but] unlike outside counsel, in-house attorneys can serve multiple functions within the corporation. In-house counsel may be involved intimately in the corporation's day to day business activities and frequently serve as integral players in business decisions or activities. Accordingly, communications involving in-house counsel might well pertain to business rather than legal matters. The privilege does not protect an attorney's business advice. Corporations may not conduct their business affairs in private simply by staffing a transaction with attorneys. Because in-house counsel may operate in a purely or primarily business capacity in connection with many corporate endeavors, the presumption that attaches to communications with outside counsel does not extend to communications with in-house counsel.").

Finally, with respect to Plaintiff's assertion of the crime-fraud exception, "parties seeking to strip attorney-client communications of their privilege under the crime-fraud exception must satisfy the court with some showing prior to judicial *in camera* review of the privileged material." *United States v. Chen*, 99 F.3d 1495, 1502 (9th Cir. 1996). "'Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate

to support a good faith belief by a reasonable person that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies. Once that showing is made, the decision whether to engage in *in camera* review rests in the sound discretion of the district court. The court should make that decision in light of the facts and circumstances of the particular case, including, among other things, the volume of materials the district court has been asked to review, the relative importance to the case of the alleged privileged information, and the likelihood that the evidence produced through in camera review, together with other available evidence then before the court, will establish that the crime-fraud exception does apply." *Id.* at 1502-03 (quoting *United States v. Zolin*, 491 U.S. 554, 572 (1989)). Here, emails between Defendant's managers discussing the wages Plaintiff was due upon his return from leave do not constitute an adequate factual basis to support a good faith belief that *in camera* review of the emails may reveal evidence to establish the claim that the crime-fraud exception applies.

### III. CONCLUSION

The court **denies without prejudice** the parties' ex parte letters and orders the following: the parties shall meet and confer immediately, and Plaintiff shall specify which of the approximately 90 emails in the privilege log it seeks. Defendant shall re-review the emails identified by Plaintiff, keeping the above principles in mind, and shall submit an updated privilege log regarding any emails over which it continues to assert the attorney-client privilege and provide copies of any emails over which it no longer asserts the privilege. If Plaintiff continues to believe that Defendant's privilege assertions were improperly made, the parties shall file a joint discovery letter by **February 2, 2015**, and Defendant shall simultaneously lodge a copy of each document in the log over which it asserts the attorney-client privilege with this court's chambers. The court may then choose to conduct an *in camera* review of some or all of the documents.

IT IS SO ORDERED.

Dated: January 23, 2015



_____
DONNA M. RYU
United States Magistrate Judge